UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

STEVE MARSH                                    CIVIL ACTION NO. 17-1539

                                               SECTION P

VS.

                                               JUDGE TERRY A. DOUGHTY

RICHLAND PARISH DETENTION                      MAG. JUDGE KAREN L. HAYES
CENTER, ET AL.

## REPORT AND RECOMMENDATION

Plaintiff Steve Marsh, a detainee at Richland Parish Detention Center proceeding pro se

and in forma pauperis, filed the instant civil rights complaint on November 21, 2017, under 42

U.S.C. § 1983.  He names Richland Parish Detention Center, "Medical Staff Richland Parish

Detention Center," Warden Ricky Scott, Nurse Jamie Doe, Nurse Taylor, and Assistant Warden

Weatherly as Defendants.[1]  For the following reasons, it is recommended that Plaintiff's claims

against Richland Parish Detention Center and "Medical Staff Richland Parish Detention Center,"

as well as Plaintiff's conditions of confinement claim, be **DISMISSED WITH PREJUDICE**.[2]

## Background

Plaintiff alleges that, on or around February 5, 2017, he "slipped and fell in the shower in

F-Dorm," injured nerves in his back, and, as a result, must use a catheter for the rest of his life.

[doc. #s 1; 16, p. 9].  Plaintiff also alleges that, on or around February 20, 2017, he "slipped and

fell into a rack in G-Dorm[,]" sustaining an injury to his right ankle.  He states that his ankle is

---

[1] This matter has been referred to the undersigned for review, report, and recommendation
in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff sets forth additional claims in his Complaint that are not subject to this Report
and Recommendation.  The undersigned directed the Clerk of Court, in a separate Memorandum
Order, to serve Plaintiff with summons forms for the additional claims.

swollen, infected, and seeps blood, [doc. # 1], and that he suffers from severe back pain, a

bladder infection, a kidney infection, headaches, and nerve damage in his feet and legs.  [doc. #

16, p. 10].

Plaintiff alleges that although his injuries occurred in February of 2017, he "didn't see the

doctor until June . . . ."[3]  A physician instructed "them" to apply antibiotic patches every other

day, but "she has not done so . . . ."  He adds that "she" later sent him to a surgical clinic and that

a physician there told him he had an ulcer that "would get well by itself."  Plaintiff alleges,

however, that the ulcer has not improved.  A nurse provided antibiotic cream and antibiotic pills,

but neither helped.

Plaintiff also contends that a physician prescribed a cane for support and that, although

Defendants are aware of his need for a cane, they refuse to allow one.  [doc. #s 1; 16, pp. 10, 13].

Plaintiff filed an Amended Complaint on April 4, 2018, clarifying that his lack of a cane or

walker caused his first fall in the shower.  [doc. # 12, p. 2].  He "has been denied a cane or

walker since his date of incarceration as a pre-trial detainee."  [doc. # 16, p. 10].  Warden Ricky

Scott told him that he could not have a cane because it was considered a weapon, but the Warden

did not provide any alternative walking aid.  *Id.*

Plaintiff alleges further that, because of the first fall and ensuing injury, a physician

instructed him to use catheters to urinate.  [doc. # 12, p. 2].  Nurse Taylor, however, has only

provided him with catheters designed for women, which caused an infection and continue to

cause pain.  *Id.* at 3-5.  He confronted Nurse Taylor about the issue and, on April 2, 2018, she

---

[3] While Plaintiff writes that he did not "file" a sick call request after falling, he also
alleges that he "has made numerous sick calls trying to acquire the proper medical treatment."
[doc. # 16, pp. 11, 13].

informed him that he must "continue to use women's catheters because they are not ordering any more . . . ." *Id.* at 5. He contends that he "should be taking shots that the doctor ordered to try and relieve him of having to use catheters." [doc. # 16, p.11]. He was transported to the emergency department at Richardson Medical Center on May 3, 2018. [doc. # 16-1, p. 2]. He complained of burning pain in his bladder, and a physician diagnosed him with "acute urinary tract infection with cystitis," prescribed Bactrim, and instructed, "Foley cath change after 2 weeks, earlier for sign or symptoms of infection." *Id.* at 3-4.

Plaintiff also complains that the "environment in the dormitory is completely unsanitary," that "water pours from underneath the toilets onto the living area floor," that "mold is growing on the walls," and that "the air circulation is highly contagious . . . ." [doc. # 12, p. 4].

Plaintiff amended again on July 2, 2018. [doc. # 16]. He claims that Nurse Jamie Doe[4] "failed to follow doctor's orders[5] for treatment," that "Warden Ricky Scott failed to force [a] nurse to follow doctor's orders," and that "all knew [that he] needed the cane to walk . . . ." *Id.* at 8. He adds that Defendants "failed to send [him] to a neurosurgeon or physician as ordered" and will not provide him with his prescribed pain medication. *Id.* at 11, 12. Because he never visited a neurosurgeon as ordered by emergency room physicians, his bladder will not function properly and he "may have to use catheters for the rest of [his] life." *Id.* at 12. He "has made numerous sick calls trying to acquire the proper medical treatment." *Id.*

---

[4] It is unclear whether Nurse Jamie Doe is Nurse Taylor, Nurse Taylor's' supervisor, or an unidentified Jane Doe.

[5] Plaintiff does not, in this particular allegation, describe the physician's orders that Defendants failed to implement. To reiterate, Plaintiff claims that physicians have prescribed pain medication, male catheters, Bactrim, antibiotic patches, and a cane.

Plaintiff asks the Court to order medical treatment outside of the detention center and to order detention center officials to "make the appropriate adjustments needed to treat [him]." [doc. # 12, pp. 5-6]. He also seeks $300,000.00 in punitive damages and $600,000.00 in compensatory damages. [doc. # 16, p. 9].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a detainee who has been permitted to proceed in forma pauperis. As a detainee seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[6]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

---

[6] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

4

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

**2. Entities Not Amenable to Suit**

Plaintiff names Richland Parish Detention Center and "Medical Staff Richland Parish Detention Center" as Defendants. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Thus, Louisiana law governs whether the entities that Plaintiff names as Defendants have

5

the capacity to be sued.  Under Louisiana law, an entity must qualify as a "juridical person,"

which is an "entity to which the law attributes personality, such as a corporation or a

partnership."  LA. CIV. CODE art. 24.

Here, neither Defendant qualifies as a juridical person.  See *Henderson v. Mid States*

*Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the

Medical Department is a legal entity amenable to suit . . . ."); *Ruggiero v. Litchfield*, 700 F. Supp.

863, 865 (M.D. La. 1988); *Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d

236 (La. Ct. App. 1977).  Accordingly, Plaintiff's claims against these two entities should be

dismissed.

### 3. Conditions of Confinement

Plaintiff alleges, cursorily, that the "environment in the dormitory is completely

unsanitary," that "water pours from underneath the toilets onto the living area floor," that "mold

is growing on the walls," and that "the air circulation is highly contagious . . . ."  [doc. # 12, p. 4].

The Due Process Clause of the Fourteenth Amendment prohibits the punitive

confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been

adjudicated.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Courts must "determin[e] whether

particular restrictions and conditions accompanying pretrial detention amount to punishment in

the constitutional sense of that word[]" or whether the conditions are "but an incident of some

other legitimate governmental purpose."  *Bell*, 441 U.S. at 538.  To determine whether the

condition is a punishment, and therefore unconstitutional, courts must ascertain whether the

"particular condition or restriction of pretrial detention is reasonably related to a legitimate

governmental objective."  *Id.* at 539.  "[I]f a restriction or condition is not reasonably related to a

legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

Here, Plaintiff's allegations regarding the conditions he endures are conclusory[7] and pled seemingly as an afterthought. [doc. # 12, p. 4]. In addition, the conditions alleged are, while unpleasant, de minimis and do not amount to constitutional violations. See *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000) (finding the following conclusional and de minimis: allegations of

---

[7] A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

inadequate fire protection, an unsanitary shower and toilet area, inadequate exercise facilities, a lack of clothing and hygiene items, and unappetizing food); *Williams v. Gusman*, 2015 WL 5970424, at *3 (E.D. La. Oct. 14, 2015) ("[T]he mere fact that mold, mildew, and rust are present does not warrant relief.").

Moreover, Plaintiff does not identify a Defendant responsible for the conditions of confinement he endures. Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Accordingly, Plaintiff's conditions of confinement claim should be dismissed.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Steve Marsh's claims against Richland Parish Detention Center and "Medical Staff Richland Parish Detention Center," as well as Plaintiff's conditions of confinement claim, be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 6th day of August, 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

9